# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

**April Cunningham**

**On behalf of herself and
all others similarly situated**

    **Plaintiffs**

    **v.**

**City Outreach, Inc.**

    **Defendants.**

**Case No. _____**

## COMPLAINT

Plaintiff, by her attorneys, for her Complaint against Defendants states as follows:

1.    This is an individual and collective action under the Fair Labor Standards Act, and an individual action under Wisconsin law by Plaintiff Cunningham, on behalf of herself and other current and former hourly employees of City Outreach, Inc., ("City Outreach"), to seek redress for City Outreach's failure to pay overtime pay required by federal law, straight time wages required by Wisconsin law, and other compensation required by contract. In addition, Plaintiff brings an individual claim that her termination of employment violated Wisconsin public policy.

### JURISDICTION AND VENUE

2.    This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3.    This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts and therefore form the same case or controversy as her FLSA claims.

1

4. This Court has personal jurisdiction over City Outreach because most of its business activities occur in the Eastern District of Wisconsin.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because all of the events giving rise to the claims described herein, in particular those events that pertain to the Named Plaintiff, occurred in this district.

## THE PARTIES

6. Named Plaintiff April Cunningham is an adult resident of the State of Wisconsin who is a former employee of City Outreach. A copy of the FLSA consent signed by Cunningham is being filed with the Court at the same time that this Complaint is filed with the Court.

7. Defendant City Outreach is a non-stock corporation registered with the State of Wisconsin. Defendant City Outreach is an enterprise within the meaning of §203 of the FLSA because it engaged in the ordinary commercial activity of providing counseling and rehabilitative services to clients, in exchange for hourly payments made by insurance companies, third party payers, and Federal and Wisconsin governmental agencies. City Outreach competes with private for-profit enterprises in both signing contracts with governmental agencies to become eligible to receive referrals for patients, and in receiving referrals for patients once the contracts are signed; so that securing an exemption from the FLSA's overtime pay provisions would give it a competitive advantage against the for-profit entities that it competes with for contracts and patients. Indeed, City Outreach's employee handbook states that positive relations with all customers, including clients receiving services and government agencies and insurance companies who pay for their care, will pay off in greater *customer* loyalty and increased *sales* and *profits*.

8. Defendant City Outreach engages in commerce, for example, by purchasing equipment, materials, and other supplies that were directly or indirectly produced outside

2

Wisconsin, by submitting paperwork for payment to governmental agencies, third party payers, and private insurance companies that are located outside Wisconsin, and by picking up medications for clients that have been moved in commerce. Since 2022, City Outreach has had annual gross volume of business that exceeded $500,000.

## FACTS

9.    In 2023, Cunningham was hired by City Outreach in the position of Targeted Case Management, to be paid based on the units of services provided.

10.    Cunningham continued to be paid by the unit through October 7, 2023. Plaintiff's unit rates were the equivalent of $0.45 per minute or $27 per hour. Between May and October of 2023, while Plaintiff was paid by the unit, she regularly worked more than 80 hours per biweekly period without receiving any overtime premium pay for her hours worked over 40 per week.

11.    Beginning on October 8, 2023, Cunningham was paid at an hourly rate of pay. Cunningham continued to regularly work in excess of 40 hours per week during the time period on and after October 8, 2023.

12.    Pursuant to City Outreach's Employee Handbook, a production-based employee is an employee who is paid based on production; so that for example Targeted Case Management employees are paid based on the units of reimbursable service they provide. Once Cunningham began to be paid by the hour rather than by the unit, and given that she was expected to regularly work more than 40 hours per week, she became a regular full-time employee of City Outreach.

13.    Cunningham reported her hours worked to City Outreach using a web-based time sheet. City Outreach bills its customers, such as governmental agencies and other payers, for each of Cunningham's hours worked. Hours worked that City Outreach can bill to its customers appear on Cunningham's check stub in the category of "Regular Pay", while hours worked that City

3

Outreach cannot bill to its customers appear on Cunningham's check stub in the category of "Office Hourly."

14. Even though Cunningham regularly worked more than 40 hours per week, she did not receive any overtime premium pay from City Outreach in 2023. In 2024, City Outreach retroactively paid to Cunningham overtime premium pay for some but not all of her overtime hours worked between October 8, 2023 and the end of 2023. Cunningham has never received any overtime premium pay from City Outreach for any of her overtime hours worked for City Outreach on or before October 7, 2023.

15. City Outreach capped Cunningham's number of hours worked in the "regular pay" category to no more than 90 hours every biweekly period, so that Cunningham did not receive any straight time or overtime compensation for her hours worked in the "regular pay" category that exceeded 90 hours per biweekly pay period.

16. Because City Outreach only paid Cunningham overtime pay for paid hours that exceeded 80 hours every biweekly period, she did not receive any overtime pay for her hours worked that exceeded 40 hours per week, but did not exceed 80 hours per biweekly pay period. For example, Cunningham did not receive any overtime premium pay for her hours worked over 40 during the week of November 16 to 22, 2025 because she did not work over 80 hours during the biweekly pay period of November 16 to 29, 2025.

17. At or around the time that Plaintiff was hired, City Outreach promised her that she would receive a bonus every six months. Plaintiff was also told during the course of her employment by City Outreach that the amount of the bonus depended on the quality of her job performance.

4

18. While she was employed by City Outreach, Plaintiff received a bonus every six months. For each overtime hour worked Plaintiff received overtime premium pay equal to exactly ½ of her straight time rate of pay, so that City Outreach did not include Plaintiff's bonuses in computing her regular rate of pay that is then used to calculate her overtime pay.

19. When she began her employment with City Outreach, Cunningham received and signed for the receipt of an employee handbook. The employee handbook includes a wage policy that states that non-production based Hourly employees, who work more than 40 hours in a workweek, will be paid time and a half for all worked time in excess of 40 hours for that work week.

20. Pursuant to the employee handbook, a regular full-time employee is both eligible for both holiday pay and must receive time and a half for each hour worked on each holiday.

21. Even though Cunningham would regularly work on holidays and reported to City Outreach that she worked on the holidays, she has never received time and a half pay for her hours worked on holidays.

22. Cunningham has never received from City Outreach the holiday pay that is promised by her employee handbook.

23. City Outreach required Cunningham to have a vehicle as a condition of her employment. After Cunningham's car broke down in February of 2026, she complied with City Outreach's requirement by renting vehicles.

24. When City Outreach requested proof that Cunningham had access to a vehicle, Cunningham provided City Outreach with a rental vehicle contract with Enterprise that showed Cunningham's name, along with the beginning and expected ending dates of the rental. Cunningham redacted from the vehicle rental contract her credit card information.

5

25. Because City Outreach Director Kenneth Browne was not happy about the redactions that Cunnigham made from her rental contract, he obtained a copy of the full rental contract that included Cunningham's personal financial information such as her credit card number without Cunningham's permission or knowledge.

26. Even though Cunningham proved that she had access to a rental car, so that she complied with City Outreach's requirement that she maintain access to a vehicle, Browne terminated Cunningham's employment with City Outreach because she complained about Browne accessing a copy of her vehicle rental agreement that contained her personal financial information.

## COLLECTIVE ACTION ALLEGATIONS

27. Plaintiff brings her First Claim for Relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all other similarly situated hourly paid City Outreach employees who (a) did not receive any overtime pay for some of their overtime hours worked because City Outreach capped them at no more than 90 "Regular Pay" hours per biweekly pay period; (b) did not receive any overtime pay for their overtime hours worked that exceeded 40 hours per week but did not exceed 80 hours per biweekly payroll period; or (c) did not receive the full amount of overtime pay owed to them because City Out-reach did not include bonuses that were promised in advance in computing their regular rates of pay.

28. Plaintiff is similarly situated to all other members of each of these proposed collectives because City Outreach disregarded some of her reported hours worked in excess of 90 "Regular Pay" hours per biweekly period for payroll purposes, did not pay her any overtime premium pay for her hours worked that exceeded 40 hours per week but did not exceed 80 hours for the biweekly period, and did not include the bonuses paid to her in computing her regular rate of pay.

6

**COUNT I.   FAILURE TO PAY OVERTIME PAY IN VIOLATION OF THE FLSA.**

29.   Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1- 28 of the Complaint.

30.   As shown by its Employee Handbook, City Outreach was fully aware of its obligation to pay overtime pay to its non-exempt employees, was fully aware that Cunningham was compensated on the basis of the units and hours she reported rather than by salary, yet failed to investigate whether it must pay overtime pay to Cunningham, whether Cunningham is entitled to overtime pay for hours worked that exceeded 40 hours for the week but did not exceed 80 hours for the pay period, and whether bonuses that it promised to Cunningham in advance and then paid to her must be included in computing her regular rate of pay.

31.   Similarly, even though City Outreach's Employee Handbook acknowledged that it followed guidelines that required it to keep records of all hours worked by all employees, City Outreach manipulated its employees number of hours worked so that they are not paid for more than 90 "Regular Pay" hours per biweekly period, though additional hours that the employees submitted through City Outreach's web-based time sheet were submitted to City Outreach's customers for payment.

32.   City Outreach's violations of the FLSA's overtime pay provisions therefore were willful, so that Cunningham is entitled to recover all overtime premium pay that she has not received on her paid 2023 work hours; as well as liquidated damages on all overtime premium pay that she earned in 2023 and that City Outreach belatedly paid to her in 2024.

33.   Each hour that Cunningham and other Collective Members reported to City Outreach via its we-based time sheet is an hour worked under the FLSA, so that City Outreach violated the FLSA by capping their paid "Regular Pay" hours at no more than 90 hours per

7

biweekly pay period, resulting in them not receiving credit for, and therefore receiving no overtime premium pay for some of their hours worked over 40 per week.

34. The FLSA requires overtime pay for all hours worked over 40 per week rather than all hours worked over 80 per biweekly period, so that City Outreach violated the FLSA by failing to pay any overtime premium pay to Cunningham and other collective members for their hours worked that exceeded 40 hours per week but did not exceed 80 hours per biweekly pay period.

35. Because City Outreach both promised the bonuses to Cunningham and other collective members in advance and announced the bonuses to induce them to improve their work performance, the bonuses that City Outreach paid to Cunningham and other collective members must be factored into the regular rate for the time periods during which they were earned. City Outreach violated the FLSA by paying to Cunningham and other collective members overtime premium pay equal to exactly ½ of their regular rate of pay, so that the bonuses they received were not included in computing the regular rate used to calculate their overtime pay.

36. Plaintiff and Collective Members are entitled to recover, in addition to all overtime pay owed to them, an equal amount as liquidated damages, plus their attorneys' fees and costs incurred in prosecuting their FLSA overtime claim.

**COUNT II. FAILURE TO PAY WAGES EARNED PURSUANT TO EMPLOYEE HANDBOOK IN VIOLATION OF WISCONSIN LAW.**

37. Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1- 36 of the Complaint.

38. Cunningham became an hourly employee rather than a production based on employee on October 8, 2023, when she began to be paid on an hourly basis rather than by the unit of production, and when City Out-reach (albeit retroactively) treated her as an overtime eligible

8

employee by, at the beginning of 2024, paying to her overtime premium pay for some of her overtime hours worked between October 8, 2023 and the end of 2023.

39. City Outreach's Employee Handbook provided that hourly employees who work more than 40 hours in a workweek will be paid time and a half for all worked time in excess of 40 hours for that workweek. Because City Outreach has never revoked or modified this promise to pay overtime pay to its hourly employees, the promised overtime pay constitutes wages provided by employers to their employees as an established policy, and therefore wages within the meaning of Wis. Stat. §109.01(3).

40. Therefore, pursuant to Wis. Stat. §109.03(1), Cunningham earned overtime pay equal to time and a half her normal compensation for each of her hours worked in excess of 40 hours per workweek. City Outreach failed to pay all overtime pay Cunningham earned by failing to credit as hours worked her "Regular Pay" work hours that exceeded 90 per biweekly period, by failing to pay her any overtime pay for her hours worked that exceeded 40 hours per week but did not exceed 80 hours per biweekly payroll period, and by failing to include the promised bonuses in computing her regular rate of pay used to calculate her overtime pay.

41. Because Cunningham became a full-time hourly employee on October 8, 2023, thereafter her work performed for City Outreach earned both the vacation pay promised by her Employee Handbook, and time and a half pay for her hours worked on the holiday promised by her Employee Handbook.

42. City Outreach violated §109.03(1) by failing to pay to Cunningham all overtime pay, vacation pay, and time and a half pay for working on holidays, which were promised to her by the Employee Handbook, and which Cunningham earned by performing work for City Outreach.

9

43. Cunningham therefore is entitled to recover all overtime wages that she earned pursuant to the terms of the Employee Handbook, plus 50% liquidated damages authorized by Wis. Stat. §109.11(2), plus her actual attorneys' fees and costs incurred in bringing this wage claim authorized by §109.03(6).

## COUNT II. FAILURE TO WAGES FOR ALL HOURS WORKED IN VIOLATION OF WINSCONSIN LAW

44. Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1-43 of the Complaint.

45. City Outreach is an employer within the meaning of Wis. Stat. §109.01(2) because it engages in the activity of employing one or more persons within the State of Wisconsin.

46. City Outreach is an employer within the meaning of DWD §272.01(5)(a) and therefore DWD §272.12 because it had control or direction over Cunningham's employment in that it could hire and fire Cunningham, decided for which clients Cunningham performed work, decided on her rate and method of payment, and implemented an employee handbook and other work rules that governed her employment.

47. All hours worked that Cunningham submitted to City Outreach via its web-based time sheet constitute hours worked under DWD §272.12(a) because Cunningham spent these hours performing services for City Outreach's customers that were required by City Outreach, and she performed these services primarily for the benefit of City Outreach, who can only bill its clients after the services were performed.

48. Wis. Stat. §109.03(1) requires employers to timely pay all wages earned by their employees, so that it entitles Cunningham to pay at the agreed upon rate for each hour worked that she submitted via City Outreach's web-based employee timesheet.

10

49. City Outreach violated §109.03(1) by failing to timely pay to Cunningham all straight time wages that she earned, so that she is entitled to recover all such wages owed to her, plus 50% liquidated damages authorized by Wis. Stat. §109.11(2), plus her actual attorneys' fees and costs incurred in bringing this wage claim authorized by §109.03(6).

## COUNT IV. DISCHARGE IN VIOLATION OF WISCONSIN PUBLIC POLICY

50. Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1-49 of the Complaint.

51. Cunningham's personal credit card number is the type of information that an employer ordinarily can only access by reviewing the employee's personal internet account that can only be accessed by entering the employee's personal access information. Cunningham's personal credit card number therefore is the type of confidential information that the Wisconsin legislature intended to protect from employers by enacting Wis. Stat. §995.55.

52. Wis. Stat. §895.55 prohibits an employer from requiring an employee, as a condition of employment, to grant access or allow observation of a personal internet account, so that the employer can gain access to confidential financial information such as the employee's personal credit card number.

53. By complaining about Browne obtaining access to her credit card information without her permission, Cunningham objected to conduct that violated the spirit if not the letter of Wis. Stat. §895.55. As the Wisconsin Supreme Court explained in *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 46 (1986), that an employer's conduct may not come within the express language of a statute is not determinative of whether the complaint states a claim that a discharge violated public policy expressed by said statute.

11

54. City Outreach therefore violated well-established public policy by terminating Cunningham on the ground that she objected to Browne obtaining access to her personal credit card information without her permission. City Outreach had no other reason for terminating Cunningham's employment when the rental contract demonstrated Cunningham had access to a car, and therefore complied with City Outreach's vehicle policy.

55. Cunningham therefore is entitled to reinstatement for the wrongful termination, plus backpay for wage losses that she has sustained as a result of her wrongful termination.

WHEREFORE, Plaintiff respectfully requests the Court to enter an order that:

a. Finds that City Outreach is liable to her and other Collective Members for all FLSA overtime pay owed to them, plus 100% liquidated damages;

b. Finds that City Outreach is liable for wages promised to her in the Employee Handbook, including overtime wages, holiday pay, and time and a half pay for hours worked on the holiday, plus 50% liquidated damages;

c. Finds that City Outreach is liable for wages owed to her, because she did not receive any wages for some hours that she submitted to City Outreach through its web-based time card; plus 50% liquidated damages;

d. Finds that City Outreach terminated her employment in violation of well-established Wisconsin public policy, thus entitling her to reinstatement and backpay; and

d. Awards to her reasonable attorneys' fees and costs incurred in maintaining and prosecuting Count I through III of this Complaint.

12

Dated this 12th day of May, 2026.

/s/Yingtao Ho
Yingtao Ho
Email: yh@previant.com
Attorney for Plaintiffs
The Previant Law Firm S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI 53203
Telephone: 414-271-4500
Fax: 414-271-6308

13

## Consent to Opt In and
## Participate as a Named Plaintiff in Suit for
## Violations of Fair Labor Standards Act

I, April Cunningham, hereby consents to participate in the lawsuit against City Outreach ("Employer"). I understand that this consent will be filed simultaneously with a lawsuit against Employer to recover unpaid overtime compensation, liquidated damages, and other damages and relief available under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. This written consent is intended to serve as my consent in writing to join in this lawsuit and become a party plaintiff as required by 29 U.S.C. § 216(b).

During the last two years, Employer has failed to pay overtime pay equal to 1.5 times the regular rate for each of my hours worked over 40 for the week.

By signing and returning this consent to sue, I understand that I will be represented by The Previant Law Firm, s.c.

Dated: 5-8-2026

Signed: _[signature]_